# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SHARON RUDDEROW and ROBERT RUDDEROW,<br><br>Plaintiffs,<br><br>v.<br><br>BOSTON SCIENTIFIC CORPORATION, JOHN AND JANE DOES 1–10, AND ABC CORPS. 1–10,<br><br>Defendants. | Civil Action<br>No. 20-08561 (CPO)<br><br>**OPINION** |

**Appearances:**

Adam M. Slater
Julia S. Slater
MAZIE SLATER KATZ & FREEMAN
103 Eisenhower Parkway, Suite 207
Roseland, NJ 07068

    *On behalf of Plaintiffs Sharon and Robert Rudderow.*

James Holsey Keale
TANENBAUM KEALE, LLP
Three Gateway Center
100 Mulberry Street, Suite 1301
Newark, NJ 07102

Marina Mcguire
TANENBAUM KEALE, LLP
One Newark Center
1085 Raymond Boulevard, 16th Floor
Newark, NJ 07102

    *On behalf of Defendant Boston Scientific Corporation.*

**O'HEARN, District Judge.**

## I.    INTRODUCTION

This matter comes before the Court on Mazie Slater Katz & Freeman, LLC's ("Mazie Slater" or "MS") Motion to Set a Reasonable Fee, (ECF No. 42), and Motion to Seal, (ECF No. 75). The Court did not hear oral argument pursuant to Local Civil Rule 78.1.[1] For the reasons discussed below, the Motion to Set a Reasonable Fee is **GRANTED IN PART AND DENIED IN PART**. The Motion to Seal is **GRANTED**.

## II.    BACKGROUND

The Court recites herein only those facts necessary to provide a brief background and resolve the pending Motions.

This is a products liability case concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse. (MS Reasonable Fee Br., ECF No. 43, at 1–2). On June 30, 2010, Plaintiff Sharon Rudderow was surgically implanted with the Uphold Vaginal Support System ("the Uphold"), a device manufactured and sold by Boston Scientific Corporation. (MS Reasonable Fee Br., ECF No. 43, at 2). She suffered, and continues to suffer, significant injuries as a result of the Uphold. (MS Reasonable Fee Br., ECF No. 43, at 2).

In 2016, shortly after filing their initial lawsuit, Plaintiffs replaced their initial counsel with Mazie Slater after having been dissatisfied with the quality of representation. (MS Reasonable Fee Br., ECF No. 43, at 2–3). The first serious settlement negotiations began in 2019, while the case was a part of the pelvic mesh Multi-District Litigation ("MDL"). (MS Reasonable Fee Br., ECF No. 43, at 3). After mediation was not successful, Plaintiffs re-filed their case in this Court on

---

[1]   The Court initially noticed this matter for argument, (ECF No. 90), however, Plaintiffs advised the Court that, while they opposed any award of a fee to Mazie Slater, they would be unable to appear for argument, (ECF No. 92).

September 9, 2022 and began discovery. (MS Reasonable Fee Br., ECF No. 43, at 3). After a second mediation on August 25, 2021, the parties reached a settlement in excess of $3,000,000. (MS Reasonable Fee Br., ECF No. 43, at 2–3).

Mazie Slater subsequently filed the two motions that the Court now addresses. First, Mazie Slater filed a Motion to Set a Reasonable Fee, (ECF No. 42), which Plaintiffs, Sharon and Robert Rudderow acting pro se,[2] opposed, (ECF Nos. 55, 56). Second, Mazie Slater filed a Motion to Seal, (ECF No. 75), seeking to permanently seal Mazie Slater's Memorandum of Law in Support of Motion to Set a Reasonable Fee, (ECF No. 43), Adam M. Slater, Esquire's Certification in Support of that Motion, (ECF No. 43-1), the associated Proposed Order, (ECF No. 43-2), Mazie Slater's December 6, 2021 Letter to the Court, (ECF No. 45), the Memorandum in Opposition filed by Sharon Rudderow, (ECF No. 55), the Memorandum in Opposition filed by Robert Rudderow, (ECF No. 56), Plaintiffs' Exhibits to those Memoranda, (ECF No. 57), Plaintiffs' Motion to File Extended Briefs, (ECF No. 62), Mazie Slater's Reply Brief, (ECF No. 65), Adam M. Slater's Certification in Support of that Reply, (ECF No. 65-1), the Exhibits to that Certification, (ECF Nos. 65-2 to 65-8), the associated Proposed Order, (ECF No. 65-9), Plaintiffs' Sur-Reply, Exhibits, and associated Proposed Order, (ECF No. 67), Plaintiffs' Motion to File Supplemental Reply Brief and Exhibits, (ECF No. 69), Plaintiffs' Opposition Letter Dated February 25, 2022, (ECF No. 76), and Plaintiffs' Motion for Leave to File Out of Time, (ECF No. 71). The Court interprets Plaintiffs' submissions as also opposing the Motion to Seal although the submissions are not entirely clear. (ECF No. 78).

---

[2] Throughout the pendency of these Motions, Plaintiffs have indicated their intent to seek legal counsel to represent them and to oppose the Motions. The Court granted multiple requests for an extension of time for Plaintiffs to do so. (ECF Nos. 47, 53). The Court further held a hearing on January 10, 2022, (ECF Nos. 58, 60), in which Plaintiffs stated that the time was sufficient for them to obtain counsel. As of this date, Plaintiffs continue to appear pro se.

Plaintiffs' submissions exceed 200 pages and include arguments and materials that are substantially irrelevant to the pending Motions.[3] The Court interprets Plaintiffs' submissions as requesting that the fee on the excess portion of the settlement be 0%, (Sharon Rudderow's Br. in Response to Motion to Set a Reasonable Fee, ECF No. 55, at 98), because Plaintiffs allege that Mazie Slater pressured them into signing the settlement agreement, manipulated them throughout the settlement process, and refused to return their medical and legal files upon their request. (ECF Nos. 55, 56). Plaintiffs also allege that Mazie Slater failed to adequately represent their interests, engaged in unethical behavior, and is attempting to deceive and manipulate the Court. (ECF Nos. 55, 56). The Court has reviewed relevant email communications during the course of this litigation between Plaintiffs and Mazie Slater and, it is clear that there has been a substantial breakdown in the attorney-client relationship. (ECF Nos. 43, 55, 56, 57).

As for the Motion to Seal, Plaintiffs request additional time to secure legal advice to determine how sealing the filings would impact their interest, citing concerns of HIPPA violations and what they allege to be their counsel's attempt to deceive the Court. However, while seemingly opposing the Motion to Seal, Plaintiffs request the redaction of their "identification, private communication, medical records, and private physician communication." (Pla. Response to Motion to Seal, ECF No. 78, at 5).

---

[3] Given Plaintiffs' pro se status, the Court granted their request to file two overlength briefs in response to the Motion to Set a Reasonable Fee. (ECF Nos. 55, 56, 57, 63). Plaintiffs were advised, however, that no further briefings would be permitted and that additional filings not in compliance with Local Civil Rule 7.1 would be stricken. (ECF Nos. 82, 89). Numerous subsequent letters submitted by Plaintiffs were thereafter stricken. (ECF Nos. 81, 83, 84, 87, 88, 94, 95).

### III.   **LEGAL STANDARD**

### A.  **Motion to Set a Reasonable Fee**

New Jersey Rule 1:21-7(c) governs the fee that an attorney may charge a client when the attorney represents the client in a personal injury action based on a contingent fee agreement. The rule sets forth the maximum contingency fee an attorney may contract for in tort cases:

> (1) 33 1/3% on the first $750,000 recovered;
> (2) 30% on the next $750,000 recovered;
> (3) 25% on the next $750,000 recovered;
> (4) 20% on the next $750,000 recovered; and
> (5) on all amounts recovered in excess of the above by application for reasonable fee in accordance with the provisions of paragraph (f) hereof[.]

N.J.R. 1:21-7(c). Accordingly, Counsel must apply to the court for a "reasonable fee" on a recovery where the total amount of the excess $3,000,000. *See* N.J.R. 1:21-7(c). The amount of the fee in excess of $3,000,000 is to be determined by the court in light of all the circumstances. *See King v. Cty. of Gloucester*, 483 F. Supp. 2d 396, 398 (D.N.J. 2007) (citing *Ehrlich v. Kids of North Jersey, Inc., et al.*, 338 N.J. Super. 442, 446 (App. Div. 2001)).

In determining the reasonable fee, the Court is guided by eight factors as laid out by the New Jersey Rules of Professional Conduct:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed on the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> (8) whether the fee is fixed or contingent.

R.P.C. 1.5(a); *see* N.J.R. 1:21-7(e) ("In all cases contingent fees charged or collected must conform to RPC 1.5(a)."); *Nikoo v. Cameron*, No. 18-11621, 2021 WL 672930, at *2 (D.N.J. Feb. 22, 2021) (applying New Jersey R.P.C. 1.5(a) to determine a reasonable fee). "Two especially important factors courts consider in determining a reasonable fee are whether 'the case presented problems which required exceptional skills beyond that normally encountered in such cases or the case was unusually time consuming.'" *King*, 483 F. Supp. 2d at 399 (citing *Wurtzel v. Werres*, 201 N.J. Super. 544, 549 (App. Div. 1985)).

### B.  Motion to Seal

Requests to seal are governed by Local Civil Rule 5.3, which provides, in pertinent part, that a request to seal must be presented by motion, and that the motion papers must describe "(a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available." L. Civ. R. 5.3(c)(2).

It is well established that there is a "common law public right of access to judicial proceedings and records," *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001), but "[i]n order to overcome this presumption of a public right of access, the movant must demonstrate that 'good cause' exists for the protection of the material at issue," *Securimetrics, Inc. v. Iridian Techs., Inc.*, No. 03-4394, 2006 WL 827889, at *2 (D.N.J. Mar. 30, 2006). Good cause exists when a party makes a particularized showing that disclosure will cause a "clearly defined and serious injury to the party seeking closure." *Id.* (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)).

A motion to seal should be granted when the movant proves that the information is confidential in nature such that allowing the general public to access the information will cause a specific and serious injury. *Pansy*, 23 F.3d at 788. "Circumstances weighing against confidentiality exist" when (1) "confidentiality is being sought over information important to public health and safety"; (2) "when the sharing of information among litigants would promote fairness and efficiency"; (3) when "a party benefiting from the order of confidentiality is a public entity or official"; and (4) "when the judicial record involves matters of legitimate public concern." *LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 222–23 (3d Cir. 2011) (quoting *Pansy*, 23 F.3d at 787–78) (internal quotations omitted).

## IV.   <u>DISCUSSION</u>

Addressing the Motion to Set a Reasonable Fee, (ECF No. 42), the Court finds that a fee of 25% in excess of $3,000,000 is appropriate considering the nature of the case and the amount of time expended by counsel. Regarding the Motion to Seal, (ECF No. 75), the Court finds that Mazie Slater has presented good cause to seal the Motion to Set a Reasonable Fee, (ECF No. 42), and associated filings and has rebutted the presumption in favor of public accessibility given the confidentiality of attorney-client communications, work product, and settlement terms discussed therein.

### A.  Motion to Set a Reasonable Fee

The Court addresses two preliminary issues:  first, Plaintiffs' opposition, and second, whether the fee agreement between Mazie Slater and Plaintiffs and the Court's discretion to set a reasonable fee is governed by N.J.R. 1:21-7(c) in its current version or as it was prior to its most recent amendment in 2014.

First, the majority of Plaintiffs' arguments opposing the Motion focus on their stated displeasure with the services of Mazie Slater, allegations that they were coerced to agree to a settlement, and the payment of a referral fee to their prior counsel. To the extent that Plaintiffs contest the calculation of the contingency fee and/or payment of any referral fee therefrom, this Court has no jurisdiction to determine such disputes. *See Saffer v. Willoughby*, 670 A.2d 527, 531–32 (1996) ("[New Jersey] Rules 1:20A–1 to –6 govern the fee arbitration process" before the appropriate district's fee committee); N.J.R. 1:20A-2(a) ("Each Fee Committee shall, pursuant to these rules, have jurisdiction to arbitrate fee disputes between clients and attorneys"); *In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig.*, 911 F.3d 666, 672 (3d Cir. 2018) (discussing that federal courts may take jurisdiction over fee disputes "where the district court had control over the disputed funds" or "where resolution of the fee dispute enables the court to resolve the underlying action over which the court has jurisdiction"). Finally, there is no motion filed by Plaintiffs seeking to set aside the settlement reached in this matter or any factual or legal basis to support such arguments.

Second, the Court must determine whether the prior or current version of N.J.R. 1:21-7(c) applies to this Motion. Prior to 2014, the maximum fee schedule permitted by N.J.R. 1:21-7(c) fixed the fee for the first $2,000,000 of a recovery,[4] requiring the Court to set the fee for any

---

[4] Prior to 2014, the maximum fee set by N.J.R. 1:21-7(c) was:

(1) 33 1/3% on the first $500,000 recovered;
(2) 30% on the next $500,000 recovered;
(3) 25% on the next $500,000 recovered;
(4) 20% on the next $500,000 recovered; and
(5) on all amounts recovered in excess of the above by application for reasonable fee in accordance with the provisions of paragraph (f) hereof[.]

recovery over $2,000,000. The current version of N.J.R. 1:21-7(c) fixes the fee for the first $3,000,000, requiring the Court to set the fee for any recovery over $3,000,000.

Mazie Slater contends that the fee agreement signed by Plaintiffs in 2016 is subject to the prior version of the rule, stating that the prior version of N.J.R. 1:21-7(c) was in place when the fee agreement was signed. (MS Reasonable Fee Br., ECF No. 43, at 4 n.3). However, N.J.R. 1:21-7(c) was most recently amended in 2014, and was in fact already place when Plaintiffs signed the fee agreement in 2016. Thus, the Court finds that Mazie Slater's fee agreement and this Motion are governed by the current version of N.J.R. 1:21-7(c), which was in effect in 2016.

Turning to the merits of the Motion, Mazie Slater seeks this Court's approval for a 33.3% fee on the settlement amount that exceeds $2,000,000. (MS Reasonable Fee Br., ECF No. 43, at 4). The 2016 fee agreement signed by Plaintiffs sets the fee for the first $2,000,000 of the settlement and states any fee on recovery in excess of $2,000,000 will be determined by the Court. (MS Reasonable Fee Br., ECF No. 43, Exh. 1). Because that fee is less than the maximum amount set by N.J.R. 1:21-7(c), the fee for recovery on the first $2,000,000 of the award is governed by the fee agreement. However, Mazie Slater's application seeking a 33.3% fee on the recovery in excess of $2,000,000 is not consistent with N.J.R. 1:21-7(c) because the Court does not have discretion to set a reasonable fee for the recovery between $2,000,000 and $3,000,000. Instead, the fee amount between $2,000,000 and $3,000,000 is governed by the fee schedule of N.J.R. 1:21-7(c).[5] As such, the fee on the recovery from $2,000,000 to $2,250,000 is set at 25% and the fee on the recovery between $2,250,000 and $3,000,000 is set at 20%. It is only on the recovery greater than $3,000,000 that the Court has authority to set a reasonable fee. *See* N.J.R. 1:21-7. Plaintiffs'

---

[5] Mazie Slater provides no analysis or discussion for its position that the 2016 fee agreement signed by Plaintiffs is not governed by the then, and now, current version of N.J.R. 1:21-7(c).

suggestion that Mazie Slater should receive no fee over $2,000,000 is not reasonable and lacks merit. Application of the factors listed in New Jersey R.P.C. 1.5(a) leads the Court to find that an award of 25% is appropriate.

When a case presents exceptional lawyering, the court will generally award a fee approximately at or above one-third of the excess amounts recovered. *See King*, 483 F. Supp. 2d. at 399 (approving a 33.33% fee on excess amount above $2,000,000, based on the prior version of N.J.R. 1:21-7(c)). Courts have found exceptional lawyering warranting a one-third recovery where the case presented significant obstacles and success appeared unlikely, *see Estate of McMahon v. Turner Corp.*, No. 05-4389, 2007 WL 2688557, at *3 (D.N.J. Sept. 7, 2007), where new law is established on appeal, *Buckelew v. Grossbard*, 461 A.2d 590, 592 (N.J. Super. Ct. 1983), *aff'd*, 469 A.2d 518 (N.J. App. Div. 1983), or "where trial, appeal, and retrial [was] required," *Luchejko v. Membreno*, 475 A.2d 696, 697 (N.J. Super. Ct. Law Div.1983) (finding exceptional lawyering in a medical malpractice action involving a "number of difficult legal issues," as well as extensive discovery, pre-trial motions, a six-day trial, and post-trial motions).

Conversely, however, when a case presents more typical circumstances, rather than exceptional circumstances, the fee will range from 20% to 25% of the excess amounts recovered. *Nikoo*, 2021 WL 672930, at *3; *see Mitzel v. Westinghouse Elec. Corp.*, 72 F.3d 414, 416–20 (3d Cir. 1995) (affirming denial of net recovery of 33.33% of settlement and fixing fee at 20% in excess recovery in unexceptional case). Courts have found cases to be unexceptional when they went to trial despite being "ripe for settlement," *Anderson*, 501 A.2d at 1066, or are not unusually time consuming, *see Mitzel*, 72 F.3d at 416, 418-19 (finding two-and-a-half years of litigation and 5100 attorney hours of discovery as not unusually time consuming where case did not present problems requiring exceptional skills).

Considering Mazie Slater's submissions regarding the time and effort expended on this case, and evaluating the required factors, the Court is not persuaded that this case was so exceptional as to warrant the requested fee of 33.3% on the recovery exceeding $3,000,000. In evaluating the case, the Court does not doubt the diligence and competence of counsel. The Court recognizes the potential difficultly in proving causation in this case—particularly given the lengthy medical history of the Plaintiff as set forth in Counsel's certification—and Mazie Slater's ability to resolve this case with a significant settlement for Plaintiffs without unnecessary trial. *See Anderson*, 501 A.2d at 1066.

However, the Court notes that Mazie Slater reported 1530.6 hours on the case over five years, vastly less than cases in which courts have found cases to be unusually time consuming. (MS Reasonable Fee Br., ECF No. 43, at 5); *see King*, 483 F. Supp. 2d at 399 (finding that 4290 attorney hours was unusually time consuming); *Mitzel*, 72 F.3d at 416, 418-19 (finding 5100 attorney hours was not unusually time consuming). While a partner did perform several hundred hours of work on this case, the large majority of the 1530.6 hours were performed by two attorneys with five or fewer years of experience and, estimating market value for the 1530.6 hours, the monetary value of the time spent on this case is much less than the value of the 33.3% fee requested. *See King*, 483 F. Supp. 2d at 398-400 (considering the value of the legal services billed at counsel's hourly rate as compared to the requested fee). Further, while the nature of pelvic mesh cases is difficult and requires a knowledge of medical procedures and medical device designs, there was no trial in this case, let alone an appeal or retrial, and the motion practice was unremarkable—no motion to dismiss, summary judgment, or *Daubert* motion having been filed.

As such, the Court finds that the case does not rise to the level of exceptional that is required to support the requested fee. Therefore, after an evaluation of the factors as they pertain

to this case, the Court will grant the Motion to Set a Reasonable Fee but award 25% on the settlement in excess of $3,000,000 instead of the requested 33.3%.[6]

### B. Motion To Seal

Mazie Slater additionally moves to seal the Motion to Set a Reasonable Fee and accompanying filings claiming that they contain information that is (1) subject to attorney-client privilege, (2) subject to the confidentiality requirement of the settlement agreement, and (3) highly confidential and proprietary regarding Mazie Slater's legal strategy in pelvic mesh cases. (MS Motion to Seal, ECF No. 75 at 2). The Court notes that while Plaintiffs state that they oppose this Motion, they expressly seek to have a significant portion of the submissions redacted. (Pla. Response to Motion to Seal, ECF No. 78, at 5). Further, while Plaintiffs request additional time to seek legal counsel on this issue, the Court has afforded Plaintiffs multiple extensions of time— almost five months have passed since the Court first granted Plaintiffs an extension of time to seek counsel, and at least two have passed since the filing of the Motion to Seal—and Plaintiffs continue to proceed pro se. (ECF Nos. 47, 53, 75). As such, Plaintiffs have had a reasonable period of time to obtain counsel. *See, e.g.*, *Hayes v. Nestor*, No. 09-6092, 2013 WL 5176703, at *2–4 (D.N.J. Sept. 12, 2013) (noting that pro se plaintiff had "ample time" to retain counsel in the two months since her counsel withdrew).

With respect to the first factor, the nature of the materials at issue, the subject of the Motion to Seal—the Motion to Set a Reasonable Fee and associated filings—contain communications between Plaintiffs and their attorney as well as the terms of the settlement agreement. The filings

---

[6] A motion under N.J.R. 1:21-7(c)(5) requires the Court to determine the maximum fee permitted. Pursuant to N.J.R. 1:21-7(d) that award "shall be computed on the net sum recovered after deducting disbursements in connection with the institution and prosecution of the claim." To the extent Mazie Slater asks this Court to determine the reasonableness of its fees or disbursements, such a request is beyond the discretion of this Court and the purview of N.J.R. 1:21-7(c).

have little, if any, relationship to the underlying claims in this action, but rather touch upon Plaintiffs' counsel's fee following the settlement agreement. The filings Mazie Slater seeks to seal are, by nature, privileged attorney-client communications and information, as they discuss communications between Mazie Slater and its clients, fee structures, and work product.

For the second factor, the legitimate private or public interests, there are many, namely, the parties' interest in maintaining attorney-client privilege, and keeping Plaintiffs' medical information, Mazie Slater's legal strategy, and the terms of the settlement confidential.

As to the third factor, it is clear to the Court that the parties will be harmed if the Motion and accompanying filings are not sealed as it will destroy the privilege of some attorney-client communications. *See Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 97 (3d Cir. 1992), *as amended* (Sept. 17, 1992) (holding that even where there may be an exception to the attorney-client privilege, documents must remain sealed). Plaintiffs, as the holder of the privilege, could certainly waive the attorney-client privilege, however, it is far from clear from their submissions that in fact they seek to do so. *See Berardino v. Prestige Mgmt. Servs., Inc.*, No. 14-3451, 2017 WL 1084523, at *5 (D.N.J. Mar. 21, 2017) ("nor were there any acts evincing a clear intent to waive the attorney-client privilege. . . ."). Further injury would result from the public having access to Mazie Slater's summary of work on Plaintiffs' case as it would reveal the attorneys' strategy and work-product. *See Pal v. Univ. of Med. & Dentistry of N.J.*, No. 11-06911, 2013 WL 4607160, at *2 (D.N.J. Aug. 29, 2013) (citing *Bracco Diagnostics, Inc. v. Amersham Health Inc.*, 2007 WL 2085350, at *5 (D.N.J. July 18, 2007)). Additionally, the settlement agreement at the heart of this matter indicates an intent by all parties to keep the contents confidential, and, thus, publication of the terms could potentially constitute a material breach of the agreement. *Nikoo*, 2021 WL 672930, at *4 (D.N.J.

Feb. 22, 2021) (citing *LEAP*, 638 F.3d at 222). Finally, the filings detail Plaintiff's medical history and treatment, which invoke serious privacy concerns. *Bertolotti v. AutoZone, Inc.*, 132 F. Supp. 3d 590, 609 (D.N.J. 2015) (citing *Everett v. Nort*, 547 Fed. App'x 117, 122 n.9 (3d Cir. 2013)) ("[t]he Third Circuit has recognized the important privacy interest in one's medical records[.]").

Regarding the final factor, since the Motion and accompanying filings discuss attorney-client communications and the terms of the settlement agreement in detail throughout, there is no less restrictive means by which to protect the parties' interests.

The Court therefore finds that good cause exists to seal the filings. Turning next to the presumption in favor of public accessibility, the Court notes that both parties are private entities, their dispute does not implicate the health and safety of the public, and their settlement agreement demonstrates an intent to maintain confidentiality. Accordingly, based on these findings, the Court finds these facts to rebut the presumption and will grant Mazie Slater's Motion to Seal.

## V.    CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART AND DENY IN PART** Mazie Slater's Motion to Set a Reasonable Fee, (ECF No. 42). The fee for the recovery under $2,000,000 is governed by the 2016 fee agreement signed by Plaintiffs; the fee for the recovery between $2,000,000 and $3,000,000 is governed by the fee schedule set by the current version of N.J.R. 1:21-7(c) meaning the fee on the recovery from $2,000,000 to $2,250,000 is set at 25% and the fee on the recovery between $2,250,000 and $3,000,000 is set at 20%; and the fee for the recovery in excess of $3,000,000 is set by the Court at 25%. The Court will also **GRANT** Mazie Slater's Motion to Seal, (ECF No. 75). An appropriate Order will be entered.

Date: May 11, 2022                          /s/ *Christine P. O'Hearn*
                                            **Christine P. O'Hearn**
                                            **United States District Judge**